**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **Vannie McFarlane**<br><br>     **Plaintiff,**<br> **-vs.-**<br><br>**Cenlar FSB**<br><br>     **Defendant.** | Chapter 7<br><br>**Bankruptcy Case No: 8-19-70192-reg**<br><br>Adv. Pro. No.: |

   Plaintiff, Vannie McFarlane, (hereinafter "Plaintiff" or "McFarlane"), by and through her counsel, as and for her complaint against Cenlar FSB (hereinafter "Cenlar") for violations as set forth in RESPA (Regulation X) and TILA (Regulation Z); and for violations of the automatic stay pursuant to 11 U.S.C §362; and for attorneys' fees, litigation expenses and costs pursuant to 28 U.S.C. § 2201 and § 2202, respectfully alleges and represents to this Court, upon information and belief as follows:

## PARTIES, JURISDICTION, AND VENUE

   1.  McFarlane is the owner of residential real property, located at and commonly known as 136 Maida Avenue, Deer Park, NY 11729 (the "Family Home") which her family has occupied as their primary principal residence at all times relevant to this Complaint.

1

2. Defendant, Cenlar (hereinafter "Defendant" or "Cenlar"), upon information and belief is a residential mortgage servicing company that maintains its principal place of business at 425 Phillips Blvd, Ewing, NJ 08618, Mercer County.

3. Upon information and belief, Cenlar is the current servicer of the Note executed by McFarlane (the "Note") and of a Mortgage on the Property that secures said Note (the "Mortgage"). Defendant services the Note and Mortgage (collectively referred to hereinafter as the "Loan"). Cenlar became the servicer of the Loan received from the prior servicer, Citi Mortgage Inc, during their default period. Cenlar, as the current servicer of the Loan is subject to federal laws governing the servicing of mortgage loans.

4. Cenlar, failed in its duty to properly service McFarlane's mortgage loan as set forth more fully herein-below, and since Cenlar was given an opportunity to correct the servicing errors via "**Notice of Error" on March 13, 2020**, *see Exhibit "A",* and did not do so. And again, on **September 8, 2020**, Cenlar was sent another Notice of Error to correct their errors. *See Exhibit "B"; Notice of Error.* Cenlar intentionally and willfully committed an intentional tort, directing the tortious behavior to New York, with the situs of the injury being Deer Park, New York. Additionally, Cenlar directed said behavior in the jurisdiction and venue where the brunt of the harm was felt, also being Deer Park, New York.

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 as this action arises under the Dodd-Frank Wall Drive Reform and Consumer Protection Act (DFA), the Real Estate Settlement Procedures Act, 12 U.S.C. §§2601, *et seq*. (RESPA), and the Truth in Lending Act as contained in the Consumer Credit Protection Act as amended 15 U.S.C. §§1601, *et seq.* This action is filed to enforce regulations promulgated by the Consumer Finance Protection Bureau

(CFPB) that became effective on January 10, 2014, specifically, 12 C.F.R. §1024, *et seq.* of Regulation X and 12 C.F.R. §1026 *et seq* of Regulation Z.

6. This Court has supplemental jurisdiction to hear any and all state law claims that are plead herein or that may subsequently arise pursuant to 28 U.S.C. §1367.

7. Venue lies in this district pursuant to 28 U.S.C. §1391(b), as Plaintiffs reside and the Property is located in New York and the intentional tort committed by the defendant was directed at this venue as was the brunt of the harm.

## INTRODUCTION

8. By this action, Plaintiffs seeks declaratory, statutory and punitive damages for: violations of the Real Estate Settlement Procedures Act, 12 U.S.C. §§2601–2617, which proscribes specific practices related to the real estate settlement process; the Truth in Lending Act, as contained in the Consumer Credit Protection Act as amended 15 U.S.C. §§1601, *et seq.*, which protects consumers; attorneys' fees, litigation expenses and costs pursuant to 28 U.S.C. §2201 and §2202;

## RELEVANT FACTS

9. After being in default of her mortgage, McFarlane filed for a Chapter 7 bankruptcy on January 8, 2019; and also filed for loss mitigation within the Chapter 7 bankruptcy on February 16, 2019. She received an Order from Honorable Judge Robert E Grossman to enter the loss mitigation process on May 7, 2019. *See docket # 14.* **Order**

**Approving entrance to loss mitigation.** At no time did the Defendant object to the motion to enter into loss mitigation, which if they were never going to give the Plaintiff a loan modification due to investor guidelines, then they should not have wasted the time of the court and the debtor for about 18 months and in violation of 12 C.F.R. §1024.41(2)(A)(B).

10. On February 25, 2019, McFarlane sent a Request for Information ("RFI") to the prior lender/servicer, CitiMortgage, Inc to request information about the loan pursuant to 12 C.F.R. §1024.36. *See Exhibit "C"; Request For Information*. Upon receipt of this RFI, Citibank sent a letter saying that the investor is **Wells Fargo Bank, NA**, and that the client was denied for a government loan modification in 2015, but "was not evaluated base on other eligibility requirements." Furthermore, that "*Wells Fargo has not given us the contractual authority to modify your loan under this program*" See Exhibit "D"; *Citibank response.*

11. The servicing of her mortgage loan was transferred during the bankruptcy to Cenlar on; and through her attorney, she submitted for a loan modification to Cenlar in an attempt to correct her default.

12. On September 26, 2019, Cenlar sent a letter stating that the file was facially complete and "*no further information is needed*", and yet they would intentionally harass and frustrate her with a barrage of additional requests of duplicative document requests. In

this letter, Cenlar claimed to have a facially complete package pursuant to §1024.41(2)(b). *See Exhibit "E"; Cenlar facially complete letter.*

13. McFarlane received a missing document letter dated October 8, 2019, requesting duplicative documents that were previously provided such as tax returns, 2017 and 2018 W2's and proof of hardship. *See Exhibit "F"; Missing Document Letter***.** After the package is deemed facially complete, the lender should not be asking for additional documents that were already provided on multiple occasions.

14. And although the request was duplicative, on November 6, 2019, McFarlane provided all the requested documents from the missing document letter dated October 8, 2019. *See Exhibit "G"; Proof of document request.*

*15.* On January 17, 2020, Cenlar sent another letter deeming the file facially complete as of January 13, 2020 and that *"no further information is needed",* and yet Cenlar again continued to harass the client with duplicative document requests. *See Exhibit "H"; Cenlar 2nd facially complete letter.*

16. McFarlane also received another missing document letter on March 5, 2020 from Cenlar and dated February 12, 2020, with a deadline of March 13, 2020. Cenlar requested documents that had been previously provided on November 6, 2019. Again, McFarlane complied and sent the documents on February 12, 2020. *See Exhibit "I" Missing*

5

*document letter dated February 12, 2020. See Exhibit "J" supporting documents sent to Cenlar.*

17.  Cenlar then sent a Denial letter dated March 17, 2020 *(See Exhibit K; March 17, 2020 denial letter*) indicating *"you have not provided all of the outstanding items requested from you in the two previous letters sent."*, even though the documents were sent on November 6, 2019 and February 12, 2020 and the letter was denying it before they could have even reviewed the documents. The supplemental documents were sent to Cenlar again on April 27, 2020. *See Exhibit "L"; Proof of submission.*

18.  On March 13, 2020, McFarlane sent a Notice of Error ("NOE") to Cenlar for alleged violations of RESPA and TILA. *See Exhibit "A". March 13, 2020 NOE.* Cenlar responded to the Notice of Error on April 7, 2020, claiming that *"We find no evidence of failure to exercise reasonable diligence and care with respect to this borrower's loss mitigation application. We similarly find no evidence of unreasonable and deliberate delays in the review process."* *See Exhibit "M". April 7, 2020 Response to NOE.*

19.  On September 8, 2020, McFarlane sent another Notice of Error ("NOE") to Cenlar for continued and multiple violations of RESPA. *See Exhibit "B", NOE.* Cenlar responded to the Notice of Error on September 23, 2020, claiming that *"Our review is taking longer than anticipated and we will need additional time to furnish a response. We will provide a response as soon as our research has concluded. See Exhibit "N";*

***September 23, 2020 Cenlar Response to NOE.*** Cenlar responds on November 12, 2020, which is over two (2) months late and also claims ***"Our review determined that no servicing errors occurred to Loan Modification review*.*" See Exhibit "R";***

20. Due to the multiple violations and errors pursuant to RESPA/TILA, McFarlane has suffered quantifiable actual, statutory and punitive damages from the negligent handling of the loss mitigation application by Cenlar. She has been accruing unnecessary default interest, legal fees, additional mortgage fees, postage costs and more only because of the failure by Cenlar to meet the required milestones in the time allotted to adequately respond to a loan modification application as is required by federal statute.

## FIRST CAUSE OF ACTION

### Violation of 12 C.F.R. §1024.35(b)(7)
### (Scope of Error Resolution)

21. Plaintiff repeats, reiterates and re-alleges each and every statement and allegation contained in all the previous paragraphs as if fully set forth herein.

22. 12 C.F.R. §1024.35(b)(7) provides in relevant part:

*"For purposes of this section, the term "error" refers to the following categories of covered errors: Failure to provide accurate information to a borrower regarding loss mitigation options and foreclosure, as required by §1024.39."*

23. After the debtor had sent all of the documents requested by the Defendant, they

7

intentionally sent a follow up Missing Document Letter for documents already asked for and received by Cenlar. The supplemental documents requested by Cenlar on June 18, 2020, were asked for in their June 22, 2020 missing document letter and were sent/received by Cenlar on June 18, 2020. We received the letter on July 2, 2020 with an expiration of July 7, 2020; and yet we had already sent it June 18, 2020; 14 days prior to the date of their letter. ***See Exhibit "O" June 22, 2020 Missing Document Letter.***

24. In response to the incorrect missing document letter, our office replied and needlessly sent in the duplicative documents, thereby wasting more time on June 18, 2020. ***See Exhibit "P"; Document submission***

*25.* Cenlar is further imposing expiration dates on documents that have none, including tax returns, w2's, death certificates, etc thereby creating additional stress and legal fees. ***See Exhibit "O"; June 22, 2020 Missing Document Letter***

26. Cenlar has additionally had a 2nd facially complete package as of June 18, 2020 and did not acknowledge it in writing within five (5) days or any other form as is required by RESPA pursuant to 1024.41(b)(2).

*27.* Again, Cenlar sent another missing document letter on July 24, 2020 requesting documents such as 2019 Tax returns, w2's, hardship letters, pay stubs contribution

income, etc even though this information was promptly provided as of June 18, 2020 and confirmed already received on the July 24, 2020. *See Exhibit "Q"; Missing Document letter.*

28. Cenlar has intentionally harassed, frustrated and stalled the loan modification process in order to deny her for a loan modification. Pursuant to RESPA/TILA, Cenlar is required to respond in a timely manner so as not to impede the Plaintiff's pursuit of her options to save her home. Instead, Cenlar dragged this process out for over 18 months, only to wrongfully deny her and put her even further behind on her mortgage payments to the point that she has little if any options to save her home. Pursuant to Regulation X 1024.41, Cenlar was obligated to deny it in its initial stages rather then to drag it out for over 18 months; creating further delinquency, legal fees, and other costs.

29. As a result of Cenlar's actions, they are liable to the borrower for actual damages, statutory damages, costs, and attorney's fees. Plaintiff sustained actual damages including but not limited to legal fees; quantifiable interest added to the loan account as a result of the duplicative requests for documents thereby stalling the loan modification process; as well as postage costs for the Request for Information and Notice of Error sent.

## SECOND CAUSE OF ACTION

**Violation of 12 C.F.R. §1024.35(b)(11)**
**(Scope of Error Resolution)**

30. Plaintiff repeats, reiterates and re-alleges each and every statement and allegation contained in all the previous paragraphs as if fully set forth herein.

31. 12 C.F.R. §1024.35(b)(11) provides in relevant part:

    *"For purposes of this section, the term "error" refers to the following categories of covered errors: Any other error relating to the servicing of a borrower's mortgage loan."*

32. Cenlar has been intentionally issuing "missing document letters" and negligently requesting the same documents after being sent to them, in an attempt to slow the process and dissuade the Plaintiff from continuing with her submission. Their intentional acts are creating the accrual of further default and arrears which will ultimately make it harder, if even possible now, for her to qualify for a loan modification and keep her home.

33. Cenlar has had a facially complete package since September 12, 2019 and has continued to make duplicative requests for documents in an attempt to deny McFarlane for a loan modification that she should otherwise qualify for.

34. Cenlar was made aware of their errors by Notice of Error for violations of 12 C.F.R. §1024.35(b)(11) by letters dated March 13, 2020 *See Exhibit "A"* and September 8, 2020. *See Exhibit "B".*

*35.* Cenlar responded on April 7, 2020 and alleges *"We find no evidence of failure to exercise reasonable diligence and care with respect to this borrower's loss mitigation application. We similarly find no evidence of unreasonable and deliberate delays in the review process."* Obviously in their own biased review, Cenlar intentionally stalls the process and then intentionally denies it, when their letters are in direct contradiction of the documents sent to them. Again, in response

10

to our letter dated September 8, 2020, Cenlar responds on November 12, 2020, which is over two (2) months late and also claims "Our review determined that no servicing errors occurred to Loan Modification review." ***See Exhibit "R"; Response to September 8, 2020 on November 12, 2020 NOE.***

36. Pursuant to 12 C.F.R. §1024.35(b)(11), Cenlar is liable for damages due to "any other error relating to the servicing of a borrower's mortgage loan". Here, Cenlar created liability for their failure to timely respond and process the loan modification application for over 18 months.

37. As a result of Cenlar's actions, they are liable to the borrower for actual damages, statutory damages, costs, and attorney's fees. Plaintiff sustained actual damages including but not limited to legal fees; quantifiable interest added to the loan account as a result of the duplicative requests for documents thereby stalling the loan modification process; as well as postage costs for the Request for Information and Notice of Error sent.

### THIRD CAUSE OF ACTION

**Violation of 12 C.F.R. §1024.38(b)(2)(iv), (v) & (vi)**

38. Plaintiff repeats, reiterates and re-alleges each and every statement and allegation contained in all the previous paragraphs as if fully set forth herein.

39. 12 C.F.R. §1024.38(b)(2)(iv), (v) & (vi) provides in relevant part:

    *"Properly evaluating loss mitigation applications. The policies and procedures required by paragraph (a) of this section shall be reasonably designed to ensure that the servicer can:*

    *(iv) Identify documents and information that a borrower is required to submit to complete a loss mitigation application and facilitate compliance with the notice required pursuant to § 1024.41(b)(2)(i)(B); and*

    *(v) Properly evaluate a borrower who submits an application for a loss mitigation option for all loss mitigation options for which the borrower may be eligible pursuant to any requirements established by the owner or assignee of the borrower's mortgage loan and, where applicable, in accordance with the requirements of § 1024.41.*

    *(vi) Promptly identify and obtain documents or information not in the borrower's control that the servicer requires to determine which loss mitigation options, if any, to offer the borrower in accordance with the requirements of § 1024.41(c)(4).*

40. Cenlar has willfully and negligently stalled the process and policies for loan modifications with erroneous and duplicative document requests.

41. Cenlar was made aware of their errors by Notice of Error for violations of 12 C.F.R. §1024.35(b)(11) by letters dated March 13, 2020 *See Exhibit "A"* and September 8, 2020. *See Exhibit "B".*

42. Cenlar has intentionally and maliciously ran McFarlane in circles for over 18 months and pursuant to **12 C.F.R. §1024.38(b)(2)(iv), (v) & (vi),** they are required by federal regulations to promptly provide all options and review all documents in

      a timely manner. Cenlar has failed in managing her application from the beginning of her submission until the present.

43. As a result of Cenlar's actions, they are liable to McFarlane for actual damages, statutory damages, costs, and attorney's fees. Plaintiff sustained actual damages including but not limited to legal fees; quantifiable interest added to the loan account as a result of the duplicative requests for documents thereby stalling the loan modification process; as well as postage costs for the Request for Information and Notice of Error sent.

## FOURTH CAUSE OF ACTION

### Violation of 12 C.F.R. §1024.41(c)
### (Evaluation of loss mitigation applications)

44. Plaintiff repeats, reiterates and re-alleges each and every statement and allegation contained in all the previous paragraphs as if fully set forth herein.

45. 12 C.F.R. §1024.41(c) provides in relevant part:

(1) *Complete loss mitigation application.* Except as provided in paragraph (c)(4)(ii) of this section, if a servicer receives a complete loss mitigation application more than 37 days before a foreclosure sale, then, within 30 days of receiving the complete loss mitigation application, a servicer shall:

(i) Evaluate the borrower for all loss mitigation options available to the borrower; and

(ii) Provide the borrower with a notice in writing stating the servicer's determination of which loss mitigation options, if any, it will offer to the borrower on behalf of the owner or assignee of the mortgage. The servicer shall include in this notice the amount of time

13

the borrower has to accept or reject an offer of a loss mitigation program as provided for in paragraph (e) of this section, if applicable, and a notification, if applicable, that the borrower has the right to appeal the denial of any loan modification option as well as the amount of time the borrower has to file such an appeal and any requirements for making an appeal, as provided for in paragraph (h) of this section.

46. Cenlar has had a facially complete loan modification application since September 12, 2019, **See exhibit "E"** and only recently denied her application. See Exhibit "S"; denial letters. Pursuant to 12 C.F.R. §1024.41(c), "if a servicer receives a complete loss mitigation application more then 37 days before a foreclosure sale, then, within 30 days of receiving the complete loss mitigation application"; and here, Cenlar completely deviates from following any of the loss mitigation regulations that guide the industry. On multiple occasions, Cenlar has had a facially complete application, but yet rather then a decision in 30 days, it took them over 18 months to deny her.

47. Cenlar has an obligation under federal statute to either approve or deny in a reasonable amount of time and to give the exact reasons why. If the investor was never going to review in good faith, then they should have objected to the original motion to enter into loss mitigation to prevent intentionally wasting the debtors time and money.

48. Cenlar was made aware of their errors by Notice of Error for violations of 12 C.F.R. §1024.35 and 12 C.F.R. §1024.41by letters dated March 13, 2020 *See Exhibit "A"* and September 8, 2020. *See Exhibit "B".* And during this 18-month period, Cenlar wastes precious time in trying to save her home and creates actual damages in legal fees, defaulted mortgage arrears, postage, as well as emotional distress created by their intentional handling of her loan modification application.

49. As a result of Cenlar's actions, they are liable to McFarlane for actual

damages, statutory damages, costs, and attorney's fees. Plaintiff sustained actual damages including but not limited to quantifiable interest added to the loan account as a result of the duplicative requests for documents thereby stalling the loan modification process, as well as postage costs for the Request for Information and Notice of Error sent.

## FIFTH CAUSE OF ACTION

### Violation of 12 C.F.R. §1024.41 (b)(2)(B)
### (Notification of a Facially Complete Package)

50.     Plaintiff repeats, reiterates and re-alleges each and every statement and allegation contained in all the previous paragraphs as if fully set forth herein.

51. 12 C.F.R. §1024.41(b)(2)(B) provides in relevant part:

*"Notify the borrower in writing within 5 days (excluding legal public holidays, Saturdays, and Sundays) after receiving the loss mitigation application that the servicer acknowledges receipt of the loss mitigation application and that the servicer has determined that the loss mitigation application is either complete or incomplete. If a loss mitigation application is incomplete, the notice shall state the additional documents and information the borrower must submit to make the loss mitigation application complete and the applicable date pursuant to paragraph (2)(ii) of this section. The notice to the borrower shall include a statement that the borrower should consider contacting servicers of any other mortgage loans secured by the same property to discuss available loss mitigation options."*

52. Cenlar was made aware of their errors by Notice of Error for violations of 12 C.F.R. §1024.35 and §1024.41 by letters dated March 13, 2020 ***See Exhibit "A"*** and September 8, 2020. ***See Exhibit "B".***

53. Not only did Cenlar intentionally not respond in writing in the required five (5) days to acknowledge receipt of the loan modification application pursuant to RESPA, but they have on at least two (2) occasions, have affirmatively claimed that the application was "facially complete". At that point, they had thirty (30) days to review and accept or deny the application. Their negligence in frustrating the review of her application has created irreparable damage to her and her options to save her home.

54. Cenlar has an obligation under federal statute to either approve or deny in a reasonable amount of time and to give the exact reasons why. If the investor was never going to review in good faith, then they should have objected to the original motion to enter into loss mitigation to prevent intentionally wasting the debtors time and money.

55. As a result of Cenlar's actions, they are liable to McFarlane for actual damages, statutory damages, costs, and attorney's fees. Plaintiff sustained actual damages including but not limited to legal fees; quantifiable interest added to the loan account as a result of the duplicative requests for documents thereby stalling the loan modification process; as well as postage costs for the Request for Information and Notice of Error sent.

## SIXTH CAUSE OF ACTION

**Violation of the Automatic Stay pursuant to 11 U.S.C. §362**

56.     Plaintiff repeats, reiterates and re-alleges each and every statement and allegation contained in all the previous paragraphs as if fully set forth herein.

57.     On January 8, 2019, Plaintiff filed a Chapter 7 Bankruptcy and the Honorable Judge Robert E Grossman approved McFarlane to participate in the loss mitigation process for a loan modification.

58.     Pursuant to 11 U.S.C. §362; The intentional disregard of the rights of the debtor in a bankruptcy is violated by Cenlar when they intentionally did not adhere to the automatic stay. The violation comes when they violated the Judge's order and contacted the debtor directly by letter after we sent a seize and desist letter to the lender/servicer. ***See Exhibit "S"; Seize and desist letter.*** In complete disregard of the automatic stay, Cenlar sent no less than five (5) letters directly to the debtor**. *See Exhibit "T"; Cenlar letters.*** By virtue of the fact that they were working with our office in her loan modification submission, Cenlar knew that she had filed for Bankruptcy; that our office was the contact persons; and that direct contact with her as opposed to our firm, is an egregious violation of the automatic stay.

59.     Pursuant to 11 U.S.C §362 (k)(2): "*Except as provided in paragraph (2), an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorney's fees, and, in appropriate circumstances, may recover punitive damages.* "

Cenlar has continued to disregard the bankruptcy code and the automatic stay and blatantly contacted the debtor directly after working with her attorneys for over a year in an attempt to modify her mortgage. This blatant disregard may call for punitive damages for their violations.

## CONCLUSION

60. Defendant's multitude of Regulation X and Z violations in this case are consistent with their continuing poor mortgage servicing practices and utter failure to comply with the RESPA and TILA regulations X and Z contained in 12 C.F.R. §1024.1 *et seq*. and 12 C.F.R. §1026.1 *et seq*.

61. Defendant's conduct is part of a pattern and practice of failing to properly service McFarlane's mortgage loan account and, pursuant to 12 U.S.C §2605 (f)(1)(B), plaintiff is entitled to statutory penalties for each and every violation of the regulations contained in 12 C.F.R. §1024.41 and §1024.35, as well as, the regulations contained in 12 C.F.R. §1026.36.

62. As a direct and proximate result of Cenlar's willful and illegal violations of Regulations X and Z and the other statutes above enumerated, Plaintiff has suffered and continues to suffer actual damages in the form of interest being charged on wrongful mortgage balance and unauthorized fees that were wrongfully incorporated into Plaintiffs' mortgage loan account, as well as postage, copying and travel costs and legal fees in attempting to correct Cenlar's errors. Plaintiffs have also suffered emotional distress, wasted time, frustration and humiliation associated with the intentional disregard of the loan modification regulations.

63. Due to the sheer number of violations present here, Plaintiffs can establish a pattern and practice of statutory violations that have occurred in connection with her mortgage

loan account. As such, Plaintiffs are also entitled to statutory damages for each violation of Regulation X and Z, and all legal fees to prosecute this case. The Plaintiff has been irreparably damaged by the egregious handling of her file. *See Exhibit "U". Affidavit of Merit and Verification.*

## JURY DEMAND

64. Plaintiffs hereby requests a trial in order to conclude these allegations.

## PRAYER FOR RELIEF

65. **WHEREFORE,** Plaintiffs pray that this Court enter its order granting judgment against Cenlar for the following:

   A. For Plaintiff's actual damages, costs, and reasonable attorney fees as to each and every Count and for each Plaintiff;

   B. For statutory damages of up to Two Thousand Dollars ($2,000.00) for each and every violation of RESPA and/or RESPA Regulations pursuant to Regulation X;

   C. For statutory damages of up to Four Thousand Dollars ($4,000.00) for each and every violation of TILA and/or TILA Regulations pursuant to Regulation Z;

   D. For actual and punitive damages for the violations of the automatic stay;

   E. For such other, further and different relief as this Honorable Court may deem just and proper.

DATED this 25th day of March, 2021

                                                      By: */s/ Darren Aronow*
                                                     Darren Aronow, Esq.
                                                     Aronow Law, P.C.
                                                     7600 Jericho Tpke, Suite 115
                                                     Woodbury, New York 11797
TO:    Cenlar FSB                          Tel.: (516) 762-6696
           425 Phillips Blvd,             Fax.: (516) 342-5685
           Ewing, NJ 08618              Email: Darren@dalawpc.com
                                                     *Counsel for Plaintiff*

           Cenlar FSB
           425 Phillips Blvd,
           Ewing, NJ 08618
           ATTN: Gregory Tornquist, CEO